NEWMAN, Circuit Judge,
dissenting.
The question is whether the cost of retorts integral to the Pidgeon magnesium production process should be treated for accounting purposes (and calculation of dumping margin) as a direct cost of production, or as factory overhead. The question arises because the retorts have a short effective life under the extreme heat and pressure of the Pidgeon process, and must be replaced about every sixty days. The Commerce Department treated the cost of the retorts as factory overhead; that determination is contrary to guidelines developed in precedent and contrary to the practice of every record producer of magnesium.
The United States does not argue on appeal that the Commerce position is correct; the United States argues only that there is “substantial evidence” on the Commerce side. Substantial evidence is determined on the record considered “as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.’” Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984). Considered on the entirety of the record, there is not substantial evidence to support the Commerce accounting position. I respectfully dissent from the court’s contrary ruling.
The cost of the retorts is “reasonably reflected” as a direct material input.
Commerce is 'charged with determining the “normal value” for this imported magnesium. In calculating this value, “[c]osts shall be allocated using a method that reasonably reflects and accurately captures all of the actual costs incurred in producing and selling the product under investigation or review.” Am. Silicon Techs. v. United States, 261 F.3d 1371, 1378 (Fed. Cir. 2001) (citing Agreement on Implementation of Article VI of the GATT, 834-35 (reprinted in 1994 U.S.C.C.A.N. at 4172)). The antidumping statute likewise instructs:
(1)(A) Costs shall normally be calculated based on records of the exporter or producer of the merchandise, if such records are kept in accordance with the generally accepted accounting principles of the exporting country ... and reasonably reflect the costs associated with the production and sale of the merchandise.
19 U.S.C. § 1677b(f)(l)(A),
The facts are not in dispute. The only issue is whether the cost of the retorts is properly accounted as direct input to production, or as factory overhead or similar indirect cost. This is not a new question in antidumping determinations, and Commerce and the courts have established general principles to guide in determining whether an input is a direct input or facto *1033 ry overhead. Commerce summarized these principles:
The Department has over time developed several factors for assessing whether inputs should be classified as direct materials or overhead (“OH”). These considerations include: 1) whether the input is physically incorporated into the final product; 2) the input’s contribution to the production process and finished product; 3) the relative cost of the input; and, 4) the way the cost of the input is typically treated in the industry.
The Department has also classified inputs as direct materials if they were found to be: 1) consumed continuously with each unit of production; 2) required for a particular segment of the production process; 3) essential for production; 4) not used for incidental purposes; or, 5) otherwise a significant input to the manufacturing process rather than a miscellaneous or occasionally used material. Also of consideration has been whether the input was so regularly replaced as to represent a direct material rather than an OH item.
As demonstrated by the variety of considerations, there is no conclusive test for reaching the appropriate classification of inputs that are not easily distinguished on their face as direct materials or OH,
Certain Steel Nails From the People’s Republic of China, 78 Fed. Reg. 16,651 (Dep’t of Commerce Mar. 18, 2013), I&D Memo at Cmt. 4.
These factors have seen litigation in a variety of situations. Physical incorporation into the final product is not disposi-tive of whether a material is accounted as a direct input, as illustrated by precedent treating materials such as catalysts, electrodes, and other production materials as direct inputs. See, e.g,, Silicon Metal from the Russian Federation, 68 Fed. Reg. 6,885 (Dep’t of Commerce Feb. 11, 2013), I&D Memo at Cmt. 25 (electrodes treated as direct materials despite lack of physical incorporation). Commerce itself has rejected “the argument that incorporation is the determinative factor when deciding whether to treat an input as direct material or an overhead expense.” Wooden Bedroom Furniture from the People’s Republic of China, 69 Fed. Reg. 67,313 (Dep’t of Commerce Nov. 17, 2004), I&D Memo at Cmt. 6.
Applying these principles, the Pidgeon retorts are a direct input material.- An explanation of why these retorts have such a short life was provided in the declaration of John Haack, an official of Magpro, LLC, a United States producer of magnesium, Mr. Haack explained that in the Pidgeon process the retorts
are deformed due to external pressure on the retorts, and lose steel mass through scaling as a result of high temperature oxidation during use. At a certain point, the retort becomes ineffective for the production of magnesium and thus has been “consumed.”
Haack Decl. at ¶ 3, J.A. 101407. Mr. Haack further explained that the retorts “are central to the production process, have a short useful life,- are consumed by the process, and have a very high unit cost.” Id. All evidence of record, including Mr. Haack’s declaration, characterized the retorts as consumable, expensive, and “essential for production” in the Pidgeon process. Commerce adopted an accounting protocol contrary to this evidence, a position unsupported by substantial evidence.

No producer of record treated the retorts as factory overhead.

The record also contains evidence of industry treatment of retorts by producers of magnesium in Malaysia and in India, as well as a second producer in China. The *1034 record shows that no producer used the accounting method adopted by Commerce (and now by this court), whereby the retorts are treated as factory overhead or as indirect materials. Nor is the evidence “equivocal,” as my colleagues propose.
The Malaysian producer, CMV Minerals Ltd., described the retorts as a “major raw material,” consumed in the process. See J.A. 100584. My colleagues agree that the “Malaysian producer[ ] classified retorts as a direct input, which is undisputed by all parties in this case.” Maj. Op. at 1030.
The Indian company that was consulted by Commerce, Southern Magnesium & Chemicals Ltd., had ceased magnesium production. This company’s accounting records specifically call out retorts as a direct expense for one year, and report only broader categories of “other” direct materials and general overhead, without itemization, for the other available years. At most, the non-itemized treatment is inconclusive as to whether retorts were classified as direct materials or factory overhead. Commerce did not, however, explain how “inconclusive” broad categorization in some years rendered the specific treatment of retorts as a direct material irrelevant.
Commerce also consulted another Chinese producer, China Magnesium Corporation (CMC). Although the majority states that “Commerce found that it was unclear whether [CMC] classified retorts as a direct input,” Maj. Op. at 1030, CMC describes the retorts as its fourth largest reoccurring, variable cost and specifically separates retorts from overhead “fixed costs.” J.A. 100575.
It is not disputed that the retorts are consumed in use and that not only are they a major production cost, but a significant unit cost. The only conclusive evidence of industry treatment is the evidence showing classification of the retorts as a direct input. Direct input was shown to be the most reasonable, objective, and fair method of accounting for the cost of retort consumption in the Pidgeon process. There was not substantial contrary evidence. I respectfully dissent.